# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

### Appellate Case No. 22-3222

Maurice J. Salem,

Appellant-Petitioner

ILLINOIS ATTORNEY REGISTRATION AND DISCIPLINARY
COMMISSION, an Illinois state agency, and JEROME LARKIN,
officially and individually,

Defendants - Appellees

**Appeal From the United States District Court for the Northern
District of Illinois. Eastern Division, District Court Case No.
1:20-cv-06531 – District Judge: John J. Tharp Jr.**

# PETITION FOR REHEARING
# AND REHEARING *EN BANC*

Dated: October 12, 2023,

<div style="margin-left:40%">

Maurice James Salem,
Counsel, *pro se*
Appellant-Petitioner
7156 W 127th Street, B-149
Palos Heights, IL 60463
Tel. (708) 277-4775
Email: salemlaw@comcast.net

</div>

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _22-3222_

Short Caption: Salem v. Larkin, et al., Case No. 20-cv-06531

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[ ] PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Maurice James Salem

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court: N/A

(3) If the party or amicus is a corporation:

1.  i) Identify all its parent corporations, if any; and
    N/A_____
2.  ii) list any publicly held company that owns 10% or more of the party's or amicus'
    stock: N/A_____

Attorney's Signature: _/s/Maurice J Salem_____ Date: 10/12/2023_____

Attorney's Printed Name: Maurice Salem, Counsel Pro Se _____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes**[X] **No**[ ]

Address: 7156 W. 127th St., B-149, Palos Heights, IL. 60463_____

Phone Number: (708) 277-4775_____ Fax Number: _____

E-Mail Address: salemlaw@comcast.net_____

rev. 01/08 AK

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Authorities ……………………………………………………………...iii

Rule 35(b)(1) Statement in Support of Rehearing *En Banc*……………………...…….1

Introduction ………………………………………………………………………1

Background …………………………………………………………………………2

Reasons for Granting Petition …………………………………………………………6

    I.      Larkin argued that Salem's representation had been a deliberate attempt to mislead.  However, the only fact-finding body in this matter was the 2017 ARDC Hearing Board, which ruled in favor of Salem. The Illinois Supreme Court could have found the Board's fact-finding was against the *manifest weight of the evidence* and reversed it, but it could NOT have conducted its own fact-finding without an evidentiary hearing. <u>This is how the appellate process works</u>……………………….…………………………………...……6

    II.     Salem appealed from orders denying two (2) of his motions seeking to either change venue or recuse any judge where there is a conflict of interest, which upon information and belief may be all the Judges in this District, including the Judges in this Court…………...……………….…9

    III.    The substantive due process and "class-of-one" discrimination claims arose after the Illinois Supreme Court imposed the second most severe punishment next to disbarment, where even the Hearing Board held that Salem's violation was "less egregious" than all prior cases were censure was imposed. The *Paul v. Davis* case is irrelevant to these claims because it is the loss of Salem's license, a property right and a fundamental right, which is what these claims are based on and that's why neither side cited the case…………………………………….……10

    IV.    This has been exhaustive litigation against corrupt government officials that Salem has a reputation and history of successfully fighting all his life. It should be beneath this Court to smear Salem's reputation by cherry-picking three cases from the hundreds he litigated to conduct guilty by association fact-finding.  However, those three cases do not smear Salem's reputation as shown below………………………12

    V.     It's the panel's decision that disregards the facts, coupled with the most basic and fundamental legal error and it's futile attempt to smear Salem's reputation, together with the undisputable appearance of conflict of interest that will severely injure this Court reputation if neither a change of venue nor the recusal motion is granted……………………………16

Conclusion…………………………………………………………………………..17

Certificate of Word Count …………………………………………………………17

Certificate of Service ………………………………………………………………17

Short Appendix, the Panel's Decision………………………………………....…18

# TABLE OF AUTHORITIES

**CASES**                                                                                                                                  **Pages**

*Galva Foundry Co. v. Heiden*, 924 F.2d 729, 729 (7th Cir. 1991)…………………….…15

*In re Greene*, 980 F.2d 590, 597 (9th Cir. 1992)……………………………………………13

*In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998)……………………………………….…..9

*Iqbal v. Patel, et al.*, No. 14-1959 (7th Cir. 2015)…………………………………………..14

*In re J&S Props., LLC*, 872 F.3d 138, 143 (3d Cir. 2017)………………………..…….13

*Paul v. Davis* 424 U.S. 693 (1976)……………………………………………...1, 9, 10

*Salem v. Egan*, No. 19-2477 (7th Cir. Mar. 10, 2020)………………………..…….…15

*In re Smith*, 168 III. 2d 269, 283, 669 N.E.2d 896 (1996)…………………………………7

*In re Spak*, 188 Ill. 2d 53, 66 (1999)……………………………………………..……6

*Supreme* Court of N.H. *v. Piper,* 470 U.S. 274, 281 (1985)………………………..…….10

*In re Timpone*, 157 III. 2d 178, 196, 623 N.E.2d 300 (1993)………………………..…….7

*In re Timpone*, 208 Ill 2d 371, 386, 804 N.E.2d 560 (2004)………………………..…….8, 10

*Tully v. McLean,* 409 Ill. App 3d 659, 670-71 (2011)………………………………..…….7

United States v. Horton, 98 F.3d 313, 316 (7th Cir. 1996)…………………………….…..9

*United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir. 1985)………………………..…….7

*Estate of Wattar v. Fox*, 71 F.4th 547, 554–55 (7th Cir. 2023)………………..12, 13, 14

*Zausa v. Zausa* (*Pellin*), No. 18-1896 (7th Cir. Nov. 1, 2018)…………………………….14

**Statutes & Rules**

28 U.S.C. 455………………………………………………..……………………….9

42 U.S.C. § 1983………………..…………………………………………………..13

*Fed. R. App. P.* 35(b)(1)(B)……………………………………...…………………..1

**Rule 35(b)(1) Statement in Support of Rehearing *En Banc***

Rehearing *en banc* is warranted because the panel's decision presents "questions of exceptional importance," *Fed. R. App. P.* 35(b)(1)(B). Given the mischaracterization of Salem's three prior appeals, the panel's legal errors in its decision and not addressing the *appearance* of conflict of interest, as required by Salem having previously petitioned for a writ of mandamus, then whether not allowing for a change of venue or recusal, will severely injure this Court's reputation given the publicly obvious conflict of interest?

## INTRODUCTION

This appeal was taken from the District Court Judge's order granting Defendants' Rule 12(b) Motion to Dismiss (Doc # 39), as well as an appeal from Order Denying Motion to Change Venue, (Doc. 17), and from an Order denying Salem's Motion to Recuse, (Doc. 21). The panel's decision in this case is attached in a Short Appendix.

The Illinois Attorney Registration and Disciplinary Commission ("ARDC") and its Administrator Larkin, who controls and regulates the law licenses of all attorneys and judges in this District and venue, including the ability of the judges in this Court to keep their employment. This is an actual conflict of interest, but at the very least an appearance of conflict of interest or lack of impartiality is an issue, which the panel failed to consider. Salem filed a Petition for Writ of Mandamus that preserved the issue of appearance of conflict on appeal. By not addressing this issue the panel not only erred on the law, but will also endanger this Court's reputation given the publicly obvious conflict of interest.

The panel's reliance on *Paul v. Davis* 424 U.S. 693 (1976), which requires a fundamental right be violated in order to plead substantive due process, was a big mistake because it was the loss of Salem's law license, a property right, a fundamental right, when

the substantive due process claim arose, and NOT the publishing of the defamatory dishonesty statement on the ARDC website.  This was the reason neither side cited the case.

Nonetheless, this case is no longer about Salem.  Salem has, in effect, won this case because Salem has publicly exposed the ARDC and Larkin who were forced to make a futile and frivolous response in their court filings, as shown in this case and the public articles in Salem's Appendix.[1]  No impartial and reasonable person can possibly see it in any other way.  The conflict of interest is the basis of Salem's two motions for either a change of venue or recusal and this is the reason that this Court's reputation will be severely injured if neither motion is granted.

## BACKGROUND

Salem did not receive his license to practice law in 2003, as the panel stated. Salem has been practicing law since 1991 as a law clerk for the Westchester County's Law Department in New York.  Salem's admission to practice law in Illinois was permitted by three (3) members of the seven-member of the character and fitness committee who dissented from the majority who denied Salem.  However, all seven-member found Salem to be honest.[2]

After leaving the Westchester County's Law Department, Salem maintained a law practice in New York and in the federal courts of various states including Illinois and strictly followed all the laws and rules without ever violating them.  Salem strict adherence

---

[1] October 27, 2017, article in the Chicago Law Bulletin, see **Complaint Exhibit B**.  (App. A, pdf. Pg. 37), and Legal Ethics Lawyer Ed Clinton Jr., "ARDC Review Board Recommends A Censure For Maurice J. Salem," (Nov. 5, 2018) (App. Q, pdf. Pg 357).
[2] the majority wrote under a Section entitled "Candor before the Court," that Salem "To his credit, Applicant exhibited some degree of candor before the Committee."  On page 18, the Dissent wrote: "He was candid before the committee and provided witnesses attesting to his good character."

to all laws and rules was based on his experience of government officials using such violations as a pretext to attack him. Now in this case, for the first time ever, Salem has been attacked by government officials in Chicago *without even a pretext of wrongdoing*. This is based on undisputable evidence that no impartial and reasonable person will deny.

### A. Salem's History

If you google "History Channel Columbia University South Africa apartheid divestment." It will state that the Divestment Movement was started by Columbia University students. That was Salem who started the movement with other students and you can see a picture of him carrying a waist high banner with four other students that stated, "APARTHEID KILLS."

In 1983, Salem graduated from Columbia University with a degree in nuclear engineering and applied physics. After taking some graduate courses in plasma physics, he joined the U.S. Navy as an engineering officer, 1984-1987. Salem worked for General Dynamics as a nuclear engineer for the Trident Submarine, 1987-1989. He then attended Pace University School of Law and left after successfully completing one-year of law school in 1990. Salem took the State Law Clerk exam in 1991 and scored the highest score to become a law clerk for the Westchester County Law Department, where he practiced law from 1991 to 2003. In 2002, Salem passed the New York bar exam prior to completing law school. He later completed his law degree from Quinnipiac University to obtain a license to practice civil rights law in federal courts outside New York State.

One of Salem's duties as a law clerk from 1991 to 2003, was to collect all relevant appellate court decision from the New York Law Journal. He created booklets that indexed

the decisions and describe how they affect Family Court practice.[3]  This gave Salem experience and knowledge in appellate court practice.

Salem has been active in his community fighting back against injustice and corrupt government officials, just as he did when he started the Apartheid Divestment Movement in college.  In 1992, Salem commenced a federal court action against the Chief of East Fishkill Police and his Lieutenant, claiming that they commenced criminal charges against him for corrupt reasons.  In 1996, a federal court jury found that they committed fraud against Salem.[4]  After this experience Salem learned to be extremely careful not to violate any laws or rules to give corrupt government officials a pretext to attack him again.

Since 1990s Salem continued to advocate against corruption and became political active in town, county and state politics.  There are more examples of how Salem fought against corrupt government officials in New York and Illinois that are too many to describe in this limited-size petition, except to say that in the 1990s, Salem became the chairman of the East Fishkill Democratic Committee, who are of no relation to the Democrats of today.

Salem has been admitted to practice law in the U.S. District Courts for the Southern District of New York, the Western District of Michigan, the Northern District of Indiana, the Northern District of Illinois, the Eastern and Western Districts of Wisconsin, as well as the U.S. Court of Appeals for the Second, Fifth, Sixth and Seventh Circuits.  With the exception of this incident, Salem has always been in good standing in all the courts he was

---

[3] This is public interest law dealing with child abuse and neglect, child support and juvenile delinquency.
[4] In New York, in the civil rights case, *Salem v. Town of East Fishkill*, Case No 92-cv-6192, in the U.S. District Court, for the Southern District of New York, a jury found in 1996 that Salem did not make a false report to the East Fishkill Chief of Police and his Lieutenant and that they brought false charges against Salem.  The jury awarded Salem $15,000.00, but more importantly the jury confirmed Salem's honesty and integrity.

admitted into. Salem worked on mainly civil rights cases suing large corporations, government officials and their agencies for discriminating against minorities and women and, as Salem's history reveals and this case shows, he has been repeatedly attacked by corrupt government officials. In Chicago for the first time, corrupt government officials attacked Salem *without even a pretext of wrongdoing*, as shown in the 2017 ARDC Hearing Board's 38-page decision that states, at page 26:

> For these reasons, we find the Administrator proved by clear and convincing evidence that Respondent held himself out as an Illinois attorney in the forcible detainer matter. <u>We wish to make clear we do not find Respondent did so intentionally. Rule5.5(b)(2) does not include an element of intent.</u> (***emphasis added***)

With respect to Salem's letterhead, at page 30, it states:

> For the reasons we have set forth above, <u>we do not find any evidence in the record of dishonest intent or knowing misconduct with respect to Respondent's letterhead.</u> Therefore, we find the Administrator did not prove Respondent engaged in dishonest conduct. (***emphasis added***)

This was the only fact-finding that took place in this matter. There can be no dispute that no dishonesty was found. Moreover, the 2017 Hearing Board fact finding was affirmed by the 2018 Review Board's decision. (V. Compl. ¶53).

Thereafter, Larkin filed a Petition for Leave to File an Appeal to the Illinois Supreme Court. Based on the rules Salem was not required to answer. Salem had the 38-page decision by the Hearing Board and the Review Board decision to support him and they were attached to Larkin's petition. Also, Salem believed that even if the Illinois Supreme Court granted Larkin leave to appeal, Salem wound have an opportunity to Respond, but that was not what occurred. The Illinois Supreme Court just responded with an Order granting the punishment Larkin sought, which was the most severe punishment next to disbarment.

At a subsequent ARDC hearing for reinstatement many witnesses, include judge David Delgado,[5] a police officer, a doctor and a pastor testified in Salem's favor. Mr. Mahboob Ali testified that Salem has a reputation in the Asian community of winning every case he takes. (Tr. 327, Ln. 4-9). However, Salem corrected Mr. Ali by testifying that he settles most of his cases. Salem has overwhelming evidence of his competence in trial and appellate level litigation. Salem won five (5) appeals in this Court and two (2) appeals in the Illinois Northern District Court overturning Bankruptcy Court Judge Cox's Orders in two separate cases. Salem won one appeal in the Sixth Circuit, and has extensive appellate court knowledge from his law clerk work in New York.

## **REASONS FOR GRANTING THE PETITION**

I.  **Larkin argued that Salem's representation had been a deliberate attempt to mislead. However, the only fact-finding body in this matter was the 2017 ARDC Hearing Board, which ruled in favor of Salem. The Illinois Supreme Court could have found the Board's fact-finding was against the *manifest weight of the evidence* and reversed it, but it could NOT have conducted its own fact-finding without an evidentiary hearing. <u>This is how the appellate process works</u>.**

It should be offensive to this Court that Salem would have to explain the most fundamental and basic rules of appellate practice, which is that an appellate court cannot conduct a fact-finding, period. The 2017 Hearing Board determined Salem's intent, not only by referring to documented evidence in the record, but also by the creditability of Salem's testimony; this required the Hearing Board to observe Salem's demeanor during his testimony, the testimony of witnesses and their demeanor and the admitted exhibits under the

---

[5] Judge David Delgado testified in favor of Salem by saying: "Well, as far as I'm concerned, your [Salem's] competence shouldn't even be an issue here. I yielded to you because I feel and I -- well, let me -- I don't want to overrule -- I don't want to overstep my boundaries because I'm a witness. You're about as competent as they come." Tr. 114, 17-22.

Illinois Rules of Evidence. *In re Spak*, 188 Ill. 2d 53, 66 (1999). This is something that the Illinois Supreme Court Judges who ordered the second most severe punishment against Salem could not have done because Salem was not present before them and there was no fact-finding hearing held before them. The Illinois Supreme Court Judges were not present at the only fact-finding trial, the 2017 Hearing Board trial, to observe the witnesses' testimony, the exhibits and their reactions. The Illinois Supreme Court should not, and cannot, second guess the Hearing Board on issues of creditability and honesty. *Tully v. McLean,* 409 Ill. App 3d 659, 670-71 (2011) (a reviewing court, therefore, must not substitute its judgement for that of the trial court regarding the credibility of witnesses); *United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir. 1985) (noting that factual findings that depend on credibility determinations based on the *demeanor of witnesses at trial* are accorded great weight on appeal).

The Illinois Supreme Court can only reverse the ARDC Hearing Board if it believes the fact-finding was *against the manifest weight of the evidence*. *In re Smith*, 168 Ill. 2d 269, 283, 669 N.E.2d 896 (1996); *In re Timpone*, 157 Ill. 2d 178, 196, 623 N.E.2d 300 (1993).

The panel in this case stated:

> Larkin argued that Salem's representation had been a deliberate attempt to mislead. The Supreme Court of Illinois likely agreed with that view, because it imposed the discipline Larkin sought—though it did not issue an opinion.

This argument by Larkin was made to the only fact-finding body in this entire matter, which was the 2017 ARDC Hearing Board, where witnesses' testimony and Exhibits were presented to a three-member Board. Thus, the Illinois Supreme Court could have found that the Board's finding was against the manifest weight of the evidence and

remanded the case, but it could not have determined that Salem was dishonest, which is the opposite of what the Hearing Board found. Moreover, in a petition for reinstatement, Salem asked the Illinois Supreme Court whether it found Salem to be dishonest, it did not answer, and again issued a one-sentence order denying Salem's petition for reinstatement.

At the 2017 ARDC Hearing Board trial, the state court judge that ARDC brought to testify, testified in Salem's favor on all issues. This is the opposite of what ARDC's counsel stated in oral argument. After the 2017 The ARDC Hearing Board trial and after Larkin was humiliated in the Chicago Law Bulletin and by other legal commentators such as shown in Salem's Appendix, Larkin appeal to the ARDC Review Board, but he changed his punishment demand from complete disbarment to 90 days "and order of the court." This was meant to deceive the public because it is not just 90 days, the order of the court requires years of litigation, with discovery & trial before another Hearing Board. A suspension "until further order of court" is the most serious sanction, next to disbarment, that can be imposed. *In re Timpone*, 208 Ill 2d 371, 386, 804 N.E.2d 560 (2004).

After the Review Board affirmed the Hearing Board's fact-finding, Larkin's petitioned the Illinois Supreme Court for Leave to Appeal only, no answer was required. Salem had the fact-finding decision of the ARDC Hearing Board and the Review Board decision to support him, which were attached to Larkin's petition. The worse-case situation Salem believed was that the Illinois Supreme Court would grant Larkin's Petition for Leave to Appeal and he would have an opportunity to respond. The worst-case situation did not happen. The Illinois Supreme Court simply issued a one-sentence order granting Larkin the exact punishment he wanted. This was a gross miscarriage of justice and unbelievable

8

because it was the highest court in Illinois that did this, which was a violation of the most basic and fundamental appellate court practice.

**II.    Salem appealed from orders denying two (2) of his motions seeking to either change venue or recuse any judge where there is a conflict of interest, which upon information and belief may be all the Judges in this District, including the Judges in this Court.**

The panel obviously misunderstood Salem's reasoning for wanting to change venue. There were two (2) motions filed by Salem, one to change venue and the other to recuse District Court Judge Tharp Jr. from this case.  The Motion to Recuse raised the issue as to whether there was an actual and/or an apparent conflict of interest under 28 U.S.C. 455(a) & (b).  Obviously, Salem was not just claiming that all Judges should be recused, only the ones with law license is controlled by Larkin.  If that happens to be all the Judge's in this District then change of venue may be appropriate.

Having petitioned for a Writ of Mandamus, Salem preserved on appeal his right to argue the "appearance" of conflict of interest between the presiding District Court Judge and the Appellees, who have control over his law license, as well as the law licenses of any counsel Salem will need at trial for representation in this District. See, December 4, 2020, denial of a Writ of Mandamus. In Re: Maurice J. Salem, Petitioner, Appeal No. 20-3310. In the Seventh Circuit the sole route to review a refusal to disqualify pursuant to § 455(a) is an immediate application for writ of mandamus, a party who fails to seek mandamus waives its right to raise the issue in a post-judgment appeal. United States v. Horton, 98 F.3d 313, 316 (7th Cir. 1996).  The appearance of impropriety may require disqualification even absent ground for disqualification specifically enumerated in § 455(b).  In re Hatcher, 150 F.3d 631, 637 (7th Cir. 1998).

By not considering how the conflict of interest appears to the public the panel made a statutory error under 28 U.S.C. 455(a), *which requires strict compliance*.  Congress created this statute because it was concerned about the public's confidence in our judicial system. The current public's confidence in our judicial system has now reached a record low, according to Gallup Polls in both September 2021 and 2022.

This error, coupled with the fundamental legal error in appellate court practice, as described in this Petition, is what will lead to a severe injury to this Court's reputation if neither of Salem's Motions to change venue nor recuse is not granted.

**III.    The substantive due process and "class-of-one" discrimination claims arose after the Illinois Supreme Court imposed the second most severe punishment next to disbarment, where even the Hearing Board held that Salem's violation was "less egregious" than all prior cases where censure was imposed. The *Paul v. Davis* case is irrelevant to these claims because it is the loss of Salem's license, a property right and a fundamental right, which gave rise to these claims and that's why neither side cited the case.**

Larkin's dishonesty statement did not exist when the substantive due process and "class-of-one" discrimination claims arose.  It was only when the Illinois Supreme Court imposed a punishment that was the second most severe punishment next to complete disbarment that those claims arose.  Salem's law license is a fundamental right.  *Supreme Court of N.H. v. Piper,* 470 U.S. 274, 281 (1985) ("The opportunity to practice law is a 'fundamental right' which falls within the ambit of the Privileges and Immunities Clause."). Thus, it was Salem's fundamental right that was violated that raised his substantive due process cause of action. *Paul v. Davis* 424 U.S. 693 (1976).

It was the severity of the unprecedented punishment, where even censure was too much & unprecedented that gave rise to substantive due process and the class-of-one discrimination claims. The punishment recommended by the Hearing Board, censure, was the least severe that could have been imposed. However, in all prior cases where censure was imposed the attorneys committed an intentional act for profit. That's why even censure was too extreme and unprecedented to impose against Salem, in that no attorney was ever punished for such an unintentional violation. The discrimination claim is based on the fact that Larkin never previously requested such a punishment against an attorney for such a minor unintentional violation and where there exists overwhelming evidence of *ill will and malice* against Salem was shown in his Opening Brief. A suspension "until further order of court" is the most serious sanction, next to disbarment, that can be imposed. *In re Timpone*, 208 Ill 2d 371, at 804. Thus, it was ridiculous to mention the *Rooker-Feldman doctrine*, whether the ARDC Hearing is Judicial or an Administrative Proceeding, because these claims arose after the Illinois Supreme Court granted Larkin's requested punishment and Salem never had an opportunity to plead them.

Larkin, with *ill will and malicious intent* to injure Salem, published a false and disparaging statement on their official state ARDC website regarding Salem. Larkin stated that Salem's license to practice law was suspended "indefinitely[6]" on the basis that Salem was dishonest to the public, see **Exhibit A** to the Verified Complaint, (App. A, pdf. Pg. 35). This statement is absolutely *retaliatory* and *vindictive* and a false statement made on the basis of *ill will and malice*, for which Larkin refused Salem's oral and written pleas to remove it and still has not removed it. See list of overwhelming reasons to justify the *ill*

---

[6] On the ARDC website it states Salem was suspended "indefinitely."

11

*will and malice* in Salem's Opening Brief. The discrimination claim is not only seeking damages against Larkin, individually, but Salem is also seeking an injunction against Larkin and the state agency the ARDC to remove that false statement from the ARDC website, under class of one discrimination and substantive due process.

Suspending Salem from the practice of law "indefinitely" is in violation of his substantive due process rights and discrimination under a class of one. Such unprecedented and extreme punishment, depriving Salem of his fundamental right to property, i.e., his license to practice law,[7] which is his livelihood, for an unintentional, inadvertent error in filling out an appearance form in a six-year-old case that caused no harm to anyone,[8] will *absolutely shock the conscious of any impartial and reasonable person*. Moreover, the indefinite suspension of Salem's license to practice law also violated the Equal Protection Clause of the Fourteenth Amendment, as a class of one discrimination, because it was a *vindictive* act based on Appellees' *ill will and the malicious intent to injure* Salem.

**IV.** **This has been exhaustive litigation against corrupt government officials that Salem has a reputation and history of successfully fighting all his life. It should be beneath this Court to smear Salem's reputation by cherry-picking three cases from the hundreds he litigated to conduct guilty by association fact-finding. However, those three cases do not smear Salem's reputation as shown below.**

In the three (3) Seventh Circuit appeals cited by the panel, as being frivolous or vexing, Judge Easterbrook is familiar with all of them because he was on all the panels. In fact, Judge Easterbrook has been on practically all the appeals Salem had in this Court.

**A.** ***Estate of Wattar v. Fox*, 71 F.4th 547, 554–55 (7th Cir. 2023).**

---

[7] The suspension of a license to practice law by any court, leads to suspension from all courts in the United States via *reciprocal discipline* policy of all courts.
[8] These were adjudicated facts by the ARDC Hearing Board that were also upheld on appeal by the Review Board.

Keep in mind that once an attorney is suspended in one court, all the court's he is admitted to automatically suspends him through a *reciprocal discipline policy,* which all courts have.  Salem has always been in good standing in all the court he was admitted into.  The sanctions imposed against Salem in this case was by Bankruptcy Court Judge Cox, who Salem successfully reversed on appeal in two (2) separate cases in the District Court.

Bankruptcy Court Judge Cox sanctioned Salem and his two clients for filing two (2) Motions in 2016, seeking to sue the bankruptcy trustee under a *Bivens* action.  The sanctions imposed against Salem and his two clients restricted their ability to file any documents without leave from the bankruptcy court and Salem fined $20,000 in sanctions.

After Salem showed that the 2016 Motions were not repetitive, the panel ruled out the repetitiveness of the 2016 Motions as a basis for sanctions, stating: "Salem's focus on *repetitiveness* misses the point." *Id*. at 55.  The panel held that the 2016 Motions did not state a *prima facie* case on the basis that a *Bivens* action was precluded, in that a bankruptcy trustee is not a government official who can be sued under a *Bivens* action.  The panel in *Wattar* believed that this was such a frivolous legal theory that it warranted the sanction Judge Cox imposed.

However, the panel in the *Wattar* case failed to explain that if Salem's legal theory that a bankruptcy trustee is a federal government agent who can be sued under a *Bivens* action is so frivolous that it warrants sanction, then how would that apply to the U.S. Court of Appeals for the Third Circuit that upheld that exact theory.  *In re J&S Props., LLC*, 872 F.3d 138, 143 (3d Cir. 2017) (holding that "bankruptcy trustees are government officials, entitled . . . to qualified immunity from § 1983 claims").  The Third Circuit held that a bankruptcy trustee was a "government official," and thus a federal agent, who can be sued

under a *Bivens* action.  However, the Ninth Circuit held: *In re Greene*, 980 F.2d 590, 597 (9th Cir. 1992) (holding that "the trustee is a representative of the estate, not an officer, agent, or instrumentality of the United States").  Thus, given the split between the Third and Ninth Circuit Courts on this issue and the fact that all the Bankruptcy Court Judges in the Northern District of Illinois jointly moved to have the Seventh Circuit panel in *Wattar* case to reissue its decision and publish it to make it precedential, then how can such a theory be so frivolous as to warrant sanctioning Salem.

Notwithstanding the sanctions issue, the injustice in the *Wattar* case is so gross that it will truly shock the conscience of any reasonable person.  Currently, *Wattar* is pending on appeal in the U.S. Supreme Court, not just on the issue of sanction, but much more importantly on the issues of whether a bankruptcy trustee is a federal government agent who can be sued under a *Bivens* action and whether a bankruptcy court can ignore or overrule a probate court order from a foreign country.  U.S. Supreme Court, docketed October 4, 2023, Case No. 23-360.

Since *Wattar* is currently pending on appeal in the U.S. Supreme Court, should the Court accept the appeal and rule on side of the Third Circuit, then would that mean the Supreme Court should also be sanctioned for such a frivolous legal theory?

### B. *Zausa v. Zausa* (*Pellin*), No. 18-1896 (7th Cir. Nov. 1, 2018)

In  the *Zausa v. Pellin* case, Salem represented Jack Zausa's wife and sued Pellin in Indiana under diversity jurisdiction.  There was no issue between Jack Zausa and Pellin in that there was diversity jurisdiction with respect to the breach of contract claim Jack Zausa had against Pellin.  However, since Jack Zausa's wife was entitled to whatever money Jack Zausa received from Pellin, she was named the Plaintiff.  The only claim that exists was

between Jack Zausa and Pellin for breach of contract and there was diversity jurisdiction between these two parties.  However, for Jack Zausa's wife, Terri Zausa, to raise the claim she was named the Plaintiff who sued her husband Jack Zausa as the Defendant and Pellin as a third-party Defendant.

District Court Judge Moody ruled that since Terri and Jack Zausa were both domiciled in Illinois there was no diversity jurisdiction and sanctioned Salem.  However, if Salem simply left Jack Zausa's name out of the caption there would not have been an issue according to the reasoning of Judge Moody.  In fact, during oral argument I the Seventh Circuit Judge Hamilton asked counsel for Pellin, what if Salem had a caption, without Jack Zausa's name, would there be a diversity jurisdictional problem?  Salem lost on the diversity jurisdictional issue because of a labeling issue and was sanctioned to pay attorney's fees for commencing the action.

However, the panel in *Zausa* did not address the issue of how Salem had previously reversed Judge Moody on appeal in another case, *Iqbal v. Patel, et al*., No. 14-1959 (7th Cir. 2015), but where Judge Moody did not reinstate the case until almost four (4) years later when Judge Moody had an opportunity to sanction Salem in the *Zausa* case in 2018.

C. ***Salem v. Egan*, No. 19-2477 (7th Cir. Mar. 10, 2020).**

The issue in this case is where was Salem domiciled: New York or Illinois.  As described in Salem history, and indeed as described by the panel's decision in this case, Salem maintain a law practice in New York and in Illinois and other states mainly in the federal courts.  Salem showed overwhelming evidence of having a residence in New York and Illinois. Salem cited a case this Court decided about a similar issue for a man who had a residence in Florida and Illinois, where the facts were similar to Salem's case, *Galva*

*Foundry Co. v. Heiden*, 924 F.2d 729, 729 (7th Cir. 1991), the panel in *Heiden* ruled he was domiciled in Florida. However, the panel in *Salem v. Egan* rendered an opposite ruling holding that Salem was domiciled in Illinois.

Even making the assumption that the panel in *Salem v. Egan* got it right, despite this panel recognizing that Salem had a law practice in New York, a residence in New York and even the same issue was raised in a New York court where Salem was found to be domiciled in New York, at the very least it was not a frivolous case.

**V.    It is the panel's decision that disregards the facts, coupled with the most basic and fundamental legal error and it's futile attempt to smear Salem's reputation, together with the undisputable appearance of conflict of interest that will severely injure this Court reputation if neither a change of venue nor the recusal motion is granted.**

On Netflix there is a movie called "The Chicago Seven," where the district court judge, who presided over the case, showed obvious bias in favor of the prosecutor.  He held the defendants' attorney in contempt several times and entered an order incarcerating all seven defendants.  However, at the end of the movie the following words flashed on the screen: "The U.S. Court of Appeals for the Seventh Circuit Vacated the Order."  What this did is give the public as sense of justice existing in our judicial system, in that, although judges are human who reflect the same faults as members of society, there is a functional higher court that is a gatekeeper to ensure justice will eventually prevail.

Salem's public reputation is well documented and established over his lifetime in fighting government corruption.  It is Larkin's reputation that is problematic given the October 27, 2017, article in the Chicago Law Bulletin, where Salem exposed the ARDC as being an agency that was captured and compared it to "Harvey Weinstein." Salem was quoted in the article as saying that like the Weinstein situation "Everybody knows that

something is wrong with the ARDC, but nobody is publishing it," see <u>Complaint Exhibit</u> <u>B</u>. (App. A, pdf. Pg. 37). Also see, article by Legal Ethics Lawyer Ed Clinton Jr., "ARDC Review Board Recommends A Censure For Maurice J. Salem," (Nov. 5, 2018) (App. Q, pdf. Pg 357), and there are more articles.

Salem is an author and is writing another book about his life experience and this case and would prefer to end his book in the same way as the Chicago Seven movie did. Salem contends that it is in the interest of this Court to uphold its duty to the public, protect its reputation and ensure public confidence in this Court. This is particularly true, given that after all that Salem has shown in this Petition, the panel in this case issued an order to show cause as to why Salem should not be sanctioned for attorney's fees. See the attached panel's decision in a Short Appendix.

Absolutely no appellate law professor or a seasoned appellate attorney will agree with the panel's ruling in this case because the errors are so fundamental in appellate practice that to even raise such issue is ridiculous and laughable. Finally, this legal commentator stated:

> Judicial misconduct breaks down the very fiber of what is necessary for a functional judiciary- citizens who believe their judges are fair and impartial. The judiciary cannot exist without the trust and confidence of the people. Judges must, therefore, be account-able to legal and ethical standards. In holding them accountable for their behavior, ju-dicial conduct review must be performed without invading the independence of judicial decision-making. This task can be daunting.

https://www.unodc.org/dohadeclaration/en/news/2019/08/judicial-misconduct-and-pub-lic-confidence-in-the-rule-of-law.html

## CONCLUSION

This case is not about Salem because Salem has exposed the facts to the public, which agrees with Salem as shown in the public articles written about this case. This case

is now about this Court, *en banc*, and whether at least one (1) Judge in this Court will seize the daunting task of protecting this Court's reputation and help in restoring the public's confidence in our judicial system.

Dated: October 12, 2023,

Respectfully submitted,

/s/*Maurice Salem*, Counsel, *pro se*
7156 West 127th Street, B-149
Palos Heights, IL 60463
Tel. (708) 277-4775
Email: salemlaw@comcast.net

## CERTIFICATE OF WORD COUNT

I, Maurice Salem, am the Petition pro se in this case and I hereby certify that this Petition's argument has **3,586 words**, according to Microsoft word-processing program.

/s/*Maurice Salem*

## CERTIFICATE OF SERVICE

I Maurice Salem hereby certify that on October 12, 2023, a copy of the foregoing Brief for Appellant served on all attorneys of record through electronic means.

/s/*Maurice Salem*

# **Short Appendix**

## **The Panel's Decision**

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-3222

MAURICE J. SALEM,

*Plaintiff-Appellant,*

*v.*

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF
THE SUPREME COURT OF ILLINOIS and JEROME LARKIN, its Ad-
ministrator, in official and individual capacities,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 20-CV-06531 — **John J. Tharp, Jr.**, *Judge.*

———————————

ARGUED SEPTEMBER 21, 2023 — DECIDED SEPTEMBER 28, 2023

———————————

Before EASTERBROOK, ROVNER, and PRYOR, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 2003 Maurice J. Salem re-
ceived a license to practice law in New York. He applied for
admission in Illinois too but was turned down. Yet between
2004 and 2019 he maintained an active practice in Illinois,
where he resides, through permission to appear *pro hac vice*—

Latin meaning "for this event" or "on this occasion"—based on his license to practice in New York. The Attorney Registration and Disciplinary Commission charged him with misconduct for representing that he was licensed to practice law in Illinois. A hearing board received evidence, found that he had made such a representation inadvertently, and recommended censure. A review board agreed. But Jerome Larkin, the ARDC's Administrator, asked the Supreme Court of Illinois to go further and forbid any state court from allowing Salem to proceed *pro hac vice* for at least 90 days.

Larkin argued that Salem's representation had been a deliberate attempt to mislead. The Supreme Court of Illinois likely agreed with that view, because it imposed the discipline Larkin sought—though it did not issue an opinion. The court's order states:

> Petition by the Administrator of the Attorney Registration and Disciplinary Commission for leave to file exceptions to the report and recommendation of the Review Board. <u>Allowed</u>. Respondent Maurice James Salem is suspended from the practice of law for ninety (90) days and until further order of the Court.

Salem, who now asks the federal judiciary to disagree with the state court's disposition, did not do himself any favors when he ignored the petition and allowed Larkin's arguments to go unanswered in the state's highest court. The lack of opposition may explain the court's belief that it did not need to write an opinion resolving a contested matter.

Salem's federal suit, based on 42 U.S.C. §1983, asks for money damages to compensate him for both the suspension order (which remains in force) and how the ARDC has described that suspension. Its website states:

> Mr. Salem is licensed in New York but was never licensed in Illinois. He has, however, maintained a law office in Cook County, Illinois, for several years. The Supreme Court of Illinois suspended him for ninety days and until further order of the Court for dishonestly holding himself out to the public as an Illinois lawyer.

Salem contends that the word "dishonestly" in this description is false and maintains that principles of equal protection and substantive due process entitle him to relief. He does not present any claim under state tort law, nor has he asked a state court to direct the ARDC to change the website's language.

The federal suit did not go well for Salem. The judge dismissed it on the pleadings, ruling that the district court lacks jurisdiction to review the state Supreme Court's decision and that the state court's decision supplies all the basis needed for the ARDC's choice of language. 2022 U.S. Dist. LEXIS 212408 (N.D. Ill. Nov. 23, 2022).

Salem devotes the bulk of his appellate brief to contending that the federal district judge in Illinois should not have resolved the suit that Salem himself filed in Illinois. According to Salem, every district judge in Illinois is disqualified because he or she has a law license and so is potentially subject to the authority that the Supreme Court of Illinois and its agency the ARDC exercise over the bar. Salem proposed that the judge "transfer venue" to Michigan to put it before a federal judge who does not have any potential conflict.

A statute, 28 U.S.C. §1404(a), permits a district court to change venue "to any other district or division where it might have been brought or to any district or division to which all parties have consented." The ARDC and Larkin have not consented to litigate this suit in Michigan, and Illinois is the only

state in which "it might have been brought". The ARDC is part of the state of Illinois; it does not do business in Michigan and has never had dealings with Salem there. Salem, who does not mention §1404 in his opening brief (and does not discuss the relevant language in his reply brief), lacks any legal support for the proposition that a district judge can order the ARDC to defend itself in Michigan.

Apparently Salem believes that a disqualified district judge can send the litigation anywhere. He does not supply either authority or argument for this novel proposition. He did not bother to do the legal research to discover how federal courts proceed when all of a district's judges are disqualified. When none of the judges is available, the Chief Judge of the Court of Appeals will designate a judge from another district within the circuit to resolve the case. 28 U.S.C. §292(b). If every judge in the circuit is disqualified, the Chief Justice of the United States can designate a judge from outside the circuit. 28 U.S.C. §292(d). In neither event will a disqualified district judge "transfer venue" as Salem proposes.

So we must ask: are all district judges in Illinois disqualified? The answer is no. Although a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned", 28 U.S.C. §455(a), the impartiality of the district judges in Illinois cannot be questioned "reasonably" in a case of this nature. The standard is objective, assessed from the perspective of an observer who possesses all material facts. *Liteky v. United States*, 510 U.S. 540, 548 (1994); *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988); *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016); *In re National Union Fire Insurance Co.*, 839 F.2d 1226, 1228–29 (7th Cir. 1988). And the first material fact that any reasonable

observer will possess is that federal judges do not need law licenses. They hold office by virtue of the President's appointment (following advice and consent of the Senate), not by virtue of anything any state does. As far as the Constitution is concerned, law licenses are unnecessary—indeed, the Constitution was adopted long before states began to license the practice of law. (Until the twentieth century, most legal practice was court-specific rather than a privilege conferred by a state-issued license. See Benjamin H. Barton, *An Institutional Analysis of Lawyer Regulation: Who Should Control Lawyer Regulation—Courts, Legislatures, or the Market?*, 37 Ga. L. Rev. 1167, 1172 & n.17 (2003).)

We appreciate that some federal judges may want to retain law licenses should they decide to return to practice. Perhaps such a judge's impartiality could be questioned "reasonably" if a given state had developed a reputation for commencing disciplinary proceedings against judges who issue adverse rulings. But Salem does not contend that the ARDC ever has done so for any federal judge—and our own research did not turn up any example, though federal judges in Illinois (and in other states) regularly resolve suits in which state licensing officials are parties. A fully informed observer therefore would not believe that a federal judge would favor the state licensing officials to protect his own interests.

An informed observer also would know that none of the language in the Code of Conduct for United States Judges— or any of the advisory opinions issued under that Code—suggests that federal judges recuse in suits against officials responsible for the regulation of the state bar. Salem's argument to the contrary is unsupported. He does not cite any language in the Code of Conduct, any statute beyond §455, or any

judicial opinion holding that recusal is required in this cir-
cumstance. (Salem does mention §455(b)(1) as well as §455(a).
Subsection (b)(1) is transparently irrelevant. It says that a
judge is disqualified if "he has a personal bias or prejudice
concerning a party, or personal knowledge of disputed evi-
dentiary facts concerning the proceeding". None of those
things applies just because a judge is licensed to practice law.)
It follows that the district judge is not disqualified.

Now for Salem's substantive contentions. The decision of
the Supreme Court of Illinois suspending Salem from the
practice of law cannot be collaterally attacked in civil litiga-
tion. It could have been reviewed by the Supreme Court of the
United States but cannot be reviewed by a district court.
That's the holding of *District of Columbia Court of Appeals v.
Feldman*, 460 U.S. 462 (1983), which like this suit arose from a
state court's order regulating its bar.

Salem contends that the *Rooker-Feldman* doctrine does not
apply because he seeks damages from the ARDC and Larkin
rather than an order setting aside the Supreme Court's deci-
sion. We need not decide when, if ever, a request for damages
is outside the scope of the *Rooker-Feldman* doctrine, because
the ARDC is a state agency and this suit rests on 42 U.S.C.
§1983. States and their agencies are not "persons" for the pur-
pose of §1983 and therefore cannot be sued for damages un-
der that statute. *Will v. Michigan Department of State Police*, 491
U.S. 58 (1989). State officials sued in their official capacities are
treated as states. *Ibid*. Salem has sued Larkin in his personal
as well as his official capacity, but Larkin cannot be personally
liable for decisions made by the Supreme Court of Illinois.

This leaves the argument that the statement on the
ARDC's website entitles Salem to damages. The fact that the

ARDC and Larkin in his official capacity are "the state" knocks out any §1983 damages remedy against them, but Larkin in his personal capacity might be deemed liable for the language to which Salem objects, for Larkin could tell his subordinates to change it. But liable under the Constitution? The word "dishonestly" is defamatory and could support a tort claim—to which Larkin could interpose the defense of truth or a privilege to report the Supreme Court's decision—but Salem does not invoke state law. He relies instead on equal protection and substantive due process.

Let us start with the latter. Substantive due process protects fundamental rights with deep historical provenance. See *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022); *Washington v. Glucksberg*, 521 U.S. 702 (1997). Freedom from being described as "dishonest" (or the equivalent) by a state actor is not a fundamental right. Indeed, we know from *Paul v. Davis*, 424 U.S. 693 (1976), that it is not a constitutional right of any kind.

Public officials distributed posters describing Davis as an "active shoplifter", and he sought a remedy under §1983. The Court held, however, that defamation is a subject for state tort law and does not deprive a person of either "liberty" or "property" for the purpose of the Due Process Clause in the Fourteenth Amendment. *Paul* added that stigma leading to the deprivation of some other interest, such as employment, might entail liberty or property and require a hearing—but Salem does not contend that the statement on the ARDC's site has caused such a loss. It is the decision by the Supreme Court of Illinois, not what the ARDC said about that decision, that ended Salem's opportunity to seek *pro hac vice* status. And Salem received a hearing before that judicial decision was

reached. (Salem also had but did not use an opportunity to present his arguments to the Supreme Court of Illinois.)

As for the equal-protection theory: Salem describes himself as a "class of one" who has been victimized by the ARDC's malice. This appears to be just artful pleading of a defamation theory, which is no sounder under the Equal Protection Clause than under the Due Process Clause. At all events, a rational basis suffices for public acts challenged under the Equal Protection Clause, see *Willowbrook v. Olech*, 528 U.S. 562 (2000), and we agree with the district judge that the decision of the Supreme Court of Illinois, read against the background of Larkin's application for Salem's suspension, supplies a rational basis for the ARDC's summary. In equal-protection law, it is enough if a rational basis may be *conceived*; the basis need not be proved by evidence. See, e.g., *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993); *National Paint & Coatings Association v. Chicago*, 45 F.3d 1124, 1127–28 (7th Cir. 1995). Conceiving a rational basis for calling Salem's conduct "dishonest" does not require mental gymnastics.

This has been frivolous and vexatious litigation, an attempt by a disappointed party to strike back at his adversaries after losing in court. The attempt was doomed by inattention to basic legal rules. Salem makes assertions about venue without analyzing the language of §1404, about how to handle recusals without mentioning §292, and about judicial ethics without mentioning the Code of Conduct. He seeks damages against a state agency and its administrator under §1983 without mentioning *Will*, relies on the Due Process Clause without mentioning *Paul*, and seeks a trial on an equal-protection theory without mentioning the rule that the rational-basis approach asks what is conceivable, not what a trier of fact

believes. In other words, Salem's contentions reflect igno-
rance of the law, indifference to the law, or both.

This is not the first time the federal judiciary has encoun-
tered inappropriate behavior from Salem. For example, in a
defamation suit that Salem filed in federal court complaining
about statements an expert witness made during other litiga-
tion, Salem described himself as a citizen of New York in an
effort to support jurisdiction based on diversity of citizenship.
A federal district judge concluded that Salem, who has lived
in Illinois since 2003, was untruthful; we affirmed. *Salem v.
Egan*, No. 19-2477 (7th Cir. Mar. 10, 2020) (nonprecedential
disposition). In a similar case that a district court dismissed
for want of jurisdiction, Salem promptly refiled in another
district court, apparently believing that subject-matter juris-
diction is district-court specific. A district judge deemed this
frivolous and ordered Salem to pay his adversary's legal fees.
We affirmed, agreeing with the district judge that Salem's
conduct was sanctionable. *Zausa v. Zausa* (*Pellin*), No. 18-1896
(7th Cir. Nov. 1, 2018) (nonprecedential disposition). The at-
torneys' fees awarded in *Pellin* remain unpaid.

Salem's preposterous arguments in a long-running bank-
ruptcy proceeding so frustrated the bankruptcy judge that she
barred him from continuing to represent any of the parties
and fined him $20,000. The district court affirmed, as did we.
*Estate of Wattar v. Fox*, 71 F.4th 547, 554–55 (7th Cir. 2023). The
bankruptcy court imposed that fine years ago, but Salem has
yet to pay even one dollar of the award.

The state courts of Illinois are not the only forum in which
Salem's practice has been suspended. Following his suspen-
sion in state court, the Northern District of Illinois imposed
reciprocal discipline. After receiving that suspension order,

Salem served discovery requests on opposing counsel in a pending case. That led to a complaint and discipline for unauthorized practice of law. (Salem asserted that he didn't know that serving discovery requests constitutes the practice of law. The court didn't believe him—nor was the excuse adequate even if Salem was as ignorant as he professed.) We have revoked his right to practice in the Seventh Circuit. And officials in New York, having learned what was happening, suspended Salem's right to practice there. *Matter of Salem*, 194 A.D.3d 20 (N.Y. 2021). That suspension remains in force. Upshot: Salem is not authorized to practice law in New York, in Illinois, in the Seventh Circuit, or in the Northern District of Illinois. But he continues to file pestiferous suits on his own behalf, of which this one is an example.

Salem's cavalcade of frivolous suits must stop. The sanctions imposed in *Estate of Wattar* and *Pellin* were designed to discourage frivolous litigation by making this conduct costly, but that does not work if Salem thumbs his nose at the court and fails to pay. Litigation can require hefty outlays from defendants, expenses that they should not be forced to bear unless a suit presents plausible claims. Salem must explain why additional sanctions—including attorneys' fees and financial penalties—should not be imposed in this case. He must understand that, unless he pays all outstanding fines and awards of fees, plus any additional award in this case, we will issue an order under *Support Systems International, Inc. v. Mack*, 45 F.3d 185 (7th Cir. 1995), that protects other persons by preventing him from filing or pursuing any civil suit until all outstanding awards have been satisfied.

The district court's judgment is affirmed. Salem has 14 days to show cause why he should not be subject to sanctions,

including an order to pay the defendants' attorneys' fees, under Fed. R. App. P. 38.